UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO GONZALEZ, JR., | No. 2:25-cv-00715-DAD-AC |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |
| CITY OF MODESTO, et al., | |
| Defendants. | (Doc. No. 9) |

This matter is before the court on defendants' motion to dismiss plaintiff's complaint filed on April 30, 2025. (Doc. No. 9.) Defendants' motion was taken under submission on the papers on July 7, 2025. (Doc. No. 23.) For the reasons explained below, defendants' motion to dismiss will be granted in part and denied in part.

**BACKGROUND**

On February 28, 2025, plaintiff Sergio Gonzalez, Jr. filed this civil rights action against defendants City of Modesto, David Ramirez, Vanessa Del Toro, and Eric Martinez-Garcia (collectively, "defendants") for purported fabrication of evidence resulting in him being falsely charged with the robbery and arrested and detained for a week. (Doc. No. 1.) In his complaint plaintiff alleges as follows.

/////

1

On October 14, 2022, an armed robbery purportedly occurred. (*Id.* at ¶ 19.) A female witness told the defendant police officers that the robbery was committed by her cousin, Sergio Gonzales (with an "s" at the end, unlike plaintiff Gonzalez), who resides in Ceres, California (unlike plaintiff, who resides in Stockton), and by her cousin's friend. (*Id.* at ¶ 21.) The female witness was repeatedly caught lying to the defendant police officers, including as to whether she witnessed the alleged crime. (*Id.*) The defendant officers threatened the witness with jail if she failed to cooperate in identifying plaintiff. (*Id.*) The witness then claimed that she was uncertain whether her cousin's name ended with an "s" or a "z" or if he was from Stockton or Ceres, before finally relenting and falsely identifying plaintiff. (*Id.*) The defendant officers ignored the alleged victim of the robbery when he told them that he thought he had just seen the suspect, with the officers telling the victim of the robbery that he was wrong in this regard. (*Id.*) The defendant officers also ignored the alleged victim of the robbery when he questioned whether the female witness was being truthful. (*Id.*)

As a result, plaintiff was arrested in Texas on March 1, 2024. (*Id.* at ¶ 23.) He was then detained for one week. (*Id.*) On or about March 4, 2024, while plaintiff was still incarcerated in Texas, his parents called the Modesto Police Department and spoke with Officer DeLaCruz. (*Id.* at ¶ 24.) They explained the misidentification, and the officer appeared to believe that plaintiff was falsely arrested and imprisoned, but he claimed that there was nothing he could do. (*Id.*)

After hiring an attorney, plaintiff was released on bail on the condition that he return to California to face the robbery charge. (*Id.* at ¶ 25.) Following the attorney's communications with the Stanislaus County District Attorney, the District Attorney moved to dismiss plaintiff's case in the interest of justice. (*Id.* at ¶¶ 26–27.) The court dismissed the case the same day. (*Id.* at ¶ 28.)

As a result of his arrest plaintiff was detained for one week, causing him severe emotional distress. (*Id.* at ¶ 29.) Plaintiff also lost wages during his imprisonment, which jeopardized his employment and top secret security clearance at his place of employment. (*Id.*) He had his Global Entry application and card revoked and incurred approximately $25,000 in attorney's fees. (*Id.*)

2

1    Based on these allegations, plaintiff brought four claims: (1) violation of the Fourth
2    Amendment and 42 U.S.C. § 1983; (2) false arrest/imprisonment in violation of California law;
3    (3) violation of the Bane Act; and (4) Intentional Infliction of Emotional Distress ("IIED"). (*Id.*
4    at ¶¶ 30–60.)
5    On April 30, 2025, defendants brought the pending motion to dismiss plaintiff's
6    complaint. (Doc. No. 9.) On May 14, 2025, plaintiff filed his opposition to the motion. (Doc.
7    No. 15.) On May 26, 2025, defendants filed their reply thereto. (Doc. No. 16.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

3

defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

**A.     *Monell* Claim**

Defendants argue that plaintiff has failed to state a cognizable *Monell* claim against defendant City of Modesto ("the municipal defendant") under 42 U.S.C. § 1983 (claim 1) because plaintiff has not alleged the requisite custom, policy, or practice, and plaintiff alleges, at most, two incidents of unconstitutional conduct—(1) the defendant officers' initial purported fabrication of evidence and (2) the failure of Officer DeLaCruz to correct the situation once he was told about the misidentification of plaintiff.  (Doc. No. 9 at 9–11.)  In opposition, plaintiff argues that his allegations involve a minimum of two instances of unconstitutional conduct, which is sufficient to support the claim.  (Doc. No. 15 at 9–10.)

"Neither state officials nor municipalities are vicariously liable for the deprivation of constitutional rights by employees." *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014).

> A local government is liable for an injury under § 1983 under three possible theories. *See Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010), *overruled on other grounds by Castro*, 833 F.3d 1060.  First, a local government may be liable if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978).  Second, a local government can fail to train employees in a manner that amounts to "deliberate indifference" to a constitutional right, such that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989).  Third, a local government may be held liable if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Gravelet-Blondin*, 728 F.3d at 1097 (internal quotation marks and citation omitted).

*Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802–03 (9th Cir. 2018).  Plaintiff has neither alleged nor argued that the municipal defendant failed to train its officers (the second possible

4

theory) or that the unconstitutional action was committed or ratified by an official with final policy-making authority (the third possible theory). Nor has plaintiff alleged or argued the existence of a "formal governmental policy[.]" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001). Instead, plaintiff argues only that the two unconstitutional acts alleged in his complaint are sufficient basis upon which to plead an official policy or custom.

The court disagrees.

> Absent a formal governmental policy, Trevino must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Gillette,* 979 F.2d at 1346–47. The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Monell v. Dept. of Soc. Serv. of N.Y.,* 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy. *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984); *see also, Meehan v. Los Angeles County,* 856 F.2d 102 (9th Cir.1988) (two incidents not sufficient to establish custom); *Davis v. Ellensburg,* 869 F.2d 1230 (9th Cir.1989) (manner of one arrest insufficient to establish policy).

*Id.*; *see also Meehan v. Cnty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) ("Proof of unconstitutional assaults by SEB agents on December 21 and March 10, standing alone, does not support a finding of liability against the County."); *Chu v. Cnty. of San Bernardino*, No. 16-cv-02185-MWF-KK, 2017 WL 11634382, at *4 (C.D. Cal. Feb. 14, 2017) ("At the hearing, Plaintiff argued that she need only plead that she was arrested twice by two separate deputies to state a claim for failure to act against the County under *Monell*. . . . Contrary to Plaintiff's contention, merely pleading a few isolated incidents of misconduct by individual deputies, without more, will not suffice to state a claim against the County under *Monell*."); *Lesher v. City of Anderson*, No. 2:21-cv-00386-WBS-DMC, 2021 WL 5744691, at *4 (E.D. Cal. Dec. 2, 2021) ("[T]he Ninth Circuit has suggested that one or two prior similar incidents, standing alone, are generally insufficient to prove the existence of an unconstitutional custom or practice[.]").

It is the case that more than one or two incidents of unconstitutional activity is not always necessary to allege a cognizable *Monell* claim. *City of Oklahoma City v. Tuttle*, 471 U.S. 808,

823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). However, because plaintiff bases his *Monell* claim *solely* on the two alleged constitutional violations by non-policymakers, absent additional allegations, plaintiff has failed to state a cognizable claim for *Monell* liability under the applicable law set forth above.

**B.     Fabrication of Evidence**

Defendants argue that plaintiff's claims brought against the individual officers for false arrest in violation of the Fourth Amendment (claim 1) and false arrest and improper imprisonment in violation of state law (claim 2) fail because the defendant officers had probable cause to arrest plaintiff because even under the allegations of his complaint, a witness identified him as the perpetrator of the robbery. (Doc. No. 9-1 at 11.) In opposition, plaintiff argues that he has sufficiently plead that the defendant officers lacked probable cause by alleging that the officers fabricated the witness's testimony by threatening jail time and ignored exculpatory evidence that was made known to them. (Doc. No. 15 at 11.) In reply, defendants "concede the issue of whether defendants had probable cause to apply for an arrest warrant at this stage in the proceedings is unnecessary to the Court's ruling on its motion to dismiss."[1] (Doc. No. 16 at 3.) In that reply defendants proceed to raise new arguments regarding plaintiff's false arrest and improper imprisonment claims. (*Id.* at 3–4.) The court declines to consider these arguments raised for the first time in defendants' reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "Probable cause exists

---

[1] The court notes that "the existence of probable cause does not resolve [a plaintiff's] Fourteenth Amendment claim for deliberate fabrication of evidence" but "in the Fourth Amendment warrant-issuance context, the probable-cause inquiry collapses into the causation inquiry." *Spencer v. Peters*, 857 F.3d 789, 802 (9th Cir. 2017). Here, plaintiff's § 1983 claim relies on the Fourth Amendment, not the Fourteenth Amendment, and arises in the warrant-issuance context, making the probable cause inquiry relevant to it.

6

when 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime.'" *Luchtel v. Hagemann*, 623 F.3d 975, 979 (9th Cir. 2010) (internal citation omitted); *see also Reimann v. Town of Los Gatos*, No. 24-5816, 2025 WL 2452055, at *1 (9th Cir. 2025). [2] "In a garden-variety false arrest claim challenging the probable cause for an arrest, if the arrest warrant is facially valid, the arresting officer enjoys qualified immunity unless 'the warrant application is so lacking in indicia of probable cause as to render official belief in its existing unreasonable[.]" *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011). "To maintain a false arrest claim for judicial deception, a plaintiff must show that the officer who applied for the arrest warrant 'deliberately or recklessly made false statements or omissions that were material to the finding of probable cause.'" *Id.* "In order to prevail on a judicial deception claim," where that claim is based on fabrication of evidence, "a plaintiff must prove" the elements of a deliberate fabrication claim, "that '(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty.'"[3] *Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018); *see also Spencer*, 857 F.3d at 798 ("To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove" the same two elements.); *Lim v. Menne*, No. 22-16798, 2024 WL 2239004, at *1 (9th Cir. May 17, 2024) ("We acknowledge the potential confusion regarding the differences between a deliberate fabrication claim and a judicial deception claim.").

Coercive interview techniques may rise to the level of deliberate fabrication, but "mere allegations that Defendants used interviewing techniques that were in some sense improper, or that violated state regulations, without more, cannot serve as the basis for a claim under § 1983." *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001). In the context of a motion for

---

[2] Citation to unpublished Ninth Circuit opinions throughout this opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

[3] Because defendants' argument exclusively relies on the statement of a witness who implicated plaintiff to demonstrate that the officers had probable cause to arrest and detain plaintiff, and plaintiff argues that the same witness statement was allegedly fabricated, the court finds that, assuming plaintiff has properly alleged that the witness statement was fabricated pursuant to the first element, then defendants have effectively conceded causation for purposes of the second element.

7

summary judgment, the plaintiff "must, *at a minimum*, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [the plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information."[4] *Id.* at 1076. "At the motion to dismiss phase, district courts have looked to whether a plaintiff alleges the existence of evidence that would corroborate their claim." *Souliotes v. City of Modesto*, No. 1:15-cv-00556-LJO-SKO, 2016 WL 3549266, at *9 (E.D. Cal. June 29, 2016) (noting that where "a plaintiff alleged that investigators 'ignored the initial autopsy findings, the inconsistencies in the lab test results, [and] the opinion of several independent forensic toxicologists,' all of which pointed to the fact that a victim was not poisoned with arsenic[,]" the court found that the plaintiff had stated a viable *Devereaux* claim, but where the plaintiff alleged that his spouse had fooled investigators with her convincing allegations against him, the court found that the plaintiff had failed to state a viable *Devereaux* claim) (citations omitted).

Here, plaintiff alleges the following regarding the defendant officers' purported fabrication of evidence:

> Upon threats of imprisonment by Defendants, a female who allegedly witnessed the robbery claimed that it was committed by her cousin, Sergio Gonzales (with an "s" at the end, unlike Gonzalez), who resides in Ceres, California (unlike Gonzalez, who resides in Stockton), along with her cousin's friend. Body camera footage shows that the female was caught repeatedly lying to Defendants, including as to whether she even witnessed the alleged crime. After Defendants did a Department of Motor Vehicles search for Sergio Gonzales in Ceres and found an abundance of results, they fabricated evidence by coercing the female, threatening her with jail if she failed to cooperate in identifying the suspect. The female then claimed that she was uncertain whether her cousin's name ended with an "s" or a "z," or if he was from Stockton or Ceres, before finally relenting and falsely identifying Gonzalez, per Defendants' demands. Thus, Defendants deliberately falsified evidence identifying Gonzalez as the suspect.

---

[4] Though not applicable here, the court notes that "those methods of proving deliberate fabrication are unnecessary in a case involving *direct evidence* of deliberate fabrication." *Spencer*, 857 F.3d at 799. Direct evidence includes, "for example, direct misquotation of witnesses in investigative reports." *Id.*

> Worse still, the body camera footage shows that Defendants ignored the alleged victim's claim that he thought he had just seen the suspect, incredibly telling him that he was wrong. Defendants also ignored the alleged victim when he questioned whether the female who identified Gonzalez was being truthful.

(Doc. No. 1 at ¶¶ 21–22.) Taken together, and particularly in light of plaintiff's allegation that defendants threatened the witness with jail time if she failed to identify plaintiff as the perpetrator, the court finds that these allegations are sufficient to plead a claim based upon alleged deliberate fabrication of evidence. *See Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013) (finding "that there was sufficient evidence to instruct the jury on the claim of fabrication of evidence" where there was evidence that "the detectives threatened to charge [the witness] with the murder if he did not provide information" and where evidence of "[t]he manner and circumstances" of the "interrogation also support[ed] the" court's conclusion); *Caldwell v. City & Cnty. of San Francisco*, 889 F.3d 1105, 1113 (9th Cir. 2018) (reversing a grant of summary judgment as to fabrication of evidence claim against one of the defendant officers where there was a dispute of material fact as to whether the officer showed up at a witness's door with the plaintiff in an effort to "purposely put [the witness] in front of [the plaintiff] to infect her recollection and suggest" that the plaintiff committed the crime at issue); *Ciria v. City & Cnty. of San Francisco*, No. 4:22-cv-07510-KAW, 2024 WL 2306285, at *6 (N.D. Cal. May 21, 2024) (finding that law enforcement need not "engage in extreme or aggressive conduct to find coercion under the *Devereaux* line of cases" and that "it can be enough to threaten to charge the witness with murder if they did not provide the desired information"); *cf. Devereaux*, 263 F.3d at 1077 (finding that "interviewers of child witnesses of suspected sexual abuse must be permitted to exercise some discretion in deciding when to accept initial denials at face value and when to reject them (or withhold judgment on them) and proceed further [and] [c]onsequently, an allegation that an interviewer disbelieved an initial denial and continued with aggressive questioning of the child cannot, *without more*, support a deliberate-fabrication-of-evidence claim") (emphasis added).

/////

/////

9

Because plaintiff has sufficiently alleged deliberate fabrication, including of the witness statement implicating plaintiff, defendants' argument that the arrest and detention was lawful because they had probable cause based on the witness's statement is unpersuasive and fails to support their motion to dismiss this claim.

## C. Bane Act

Defendants argue that plaintiff's Bane Act claim (claim 3) must be dismissed because the individual officers had "sufficient probable cause[.]"[5] (Doc. No. 9-1 at 14.) For the reasons explained above, to the extent defendants contend that even accepting allegations of plaintiff's complaint as true this claim should be dismissed because they had probable cause to arrest plaintiff, that argument is rejected.

## D. IIED

Defendants next argue that plaintiff's IIED claim (claim 4) must be dismissed because his complaint contains no allegations that the officers intended to cause emotional distress or that plaintiff suffered severe or extreme emotional distress. (*Id.* at 14–15.) In opposition, plaintiff argues that he has sufficiently identified "Defendants' actions, and the consequences of those actions, that caused Plaintiff to suffer severe emotional distress." (Doc. No. 15 at 15.) Plaintiff identifies these consequences as including severe emotional distress, lost wages, jeopardizing of his employment and his top secret security clearance, revocation of his Global Entry application, and $25,000 in attorney's fees. (*Id.* at 14–15.)

"The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the

---

[5] Defendants briefly argue that plaintiff's Bane Act claim fails because of California Penal Code § 847 *et seq.* (Doc. No. 9-1 at 14) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 486–87 (9th Cir. 2007)). "That statute provides that an officer cannot be held civilly liable for false imprisonment where the officer, 'acting within the scope of his or her authority,' made a 'lawful' arrest or 'had reasonable cause to believe the arrest was lawful.'" *Blankenhorn*, 485 F.3d at 486 (citations omitted). This argument relies on defendants' previous argument, that the defendant officers had probable cause to arrest and detain plaintiff, which the court has already rejected.

defendant's outrageous conduct." *Christensen v. Superior Ct.*, 54 Cal. 3d 868, 903 (1991) (cleaned up) (internal citation omitted).  As to this second element, the plaintiff must allege "emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (cleaned up) (citations omitted).

The only allegation in plaintiff's complaint relevant to the second element is his conclusory assertion that the misconduct caused him to suffer "severe emotional distress." (Doc. No. 1 at ¶¶ 5, 29, 59.)  "There are no details as to how Plaintiff's emotional distress manifested. This is grounds for dismissal." *Suarez v. Bank of Am. Corp.*, No. 18-cv-01202-MEJ, 2018 WL 2431473, at *28 (N.D. Cal. May 30, 2018); *see also Delk v. Ocwen Fin. Corp.*, No. 3:17-cv-02769-WHO, 2017 WL 3605219, at *11 (N.D. Cal. Aug. 21, 2017) ("Her conclusory allegations of 'mental anguish and severe emotional distress' are insufficient, and the IIED claim is DISMISSED WITH LEAVE TO AMEND.").  The other harms alleged by plaintiff, including lost wages and attorney's fees, are not manifestations of plaintiff's emotional distress but instead independent alleged harms that may have, as plaintiff argues, "caused" or contributed to his emotional distress.  (Doc. No. 15 at 15.)  In contrast, relevant manifestations of severe emotional distress might include, among others, panic attacks consisting of anxiety, tightness in the chest and heart palpitations, depression, inability to sleep, developing a serious drinking problem, and a post-traumatic stress disorder diagnosis involving recurring and intrusive recollections of the events, recurring nightmares, and flashbacks of the events.  *See Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397, 410 (1994), *as modified* (Mar. 4, 1994).[6]

As presently alleged, plaintiff's IIED claim is insufficient and will therefore be dismissed.

**E.     Qualified Immunity**

Defendants argue that the individual officers are entitled to the dismissal on qualified immunity grounds because, they contend, there was no clearly established law that would have

---

[6] Plaintiff is warned for purposes of any amendment to the complaint that allegations of "discomfort, worry, anxiety, upset stomach, concern, and agitation" would be insufficient to plead severe emotional distress. *Hughes*, 46 Cal. 4th at 1051.

put them on notice that their actions were unlawful when they applied for and were granted a warrant for plaintiff's arrest. (Doc. No. 9-1 at 17.) In opposition, plaintiff argues that there is a clearly established right to be free from criminal charges based on false evidence that was deliberately fabricated by law enforcement officers. (Doc. No. 15 at 15.)

> In *Saucier v. Katz,* 533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court clarified the two-step qualified immunity inquiry. To decide whether a defendant is protected by qualified immunity, a court must first determine whether, "[t]aken in the light most favorable to the party asserting injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 2156. If the plaintiff's factual allegations do add up to a violation of the plaintiff's federal rights, then the court must proceed to determine whether the right was "clearly established," *i.e.,* whether the contours of the right were already delineated with sufficient clarity to make a reasonable officer in the defendant's circumstances aware that what he was doing violated the right. *Id.*

*Devereaux*, 263 F.3d at 1074. Above, the court has already addressed and rejected defendants' arguments as to the first step, whether the defendant officers' conduct as alleged violated a constitutional right. Therefore, the court turns to the second step of the qualified immunity inquiry, whether the right was clearly established.

In *Devereaux*, the Ninth Circuit found that the right to be free from criminal charges based on fabricated evidence is a clearly established right. *Id*. at 1074–75 ("[W]e are persuaded that there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government. . . . [T]he proposition is virtually self-evident[.]"). Further, "*Devereaux* answers the question of whether it was clearly established in 1992 that coercive interview tactics . . . violated a defendant's constitutional rights." *Godfrey v. Trujillo*, No. 25-cv-03462-AMO, 2025 WL 2391445, at *5, *8 (N.D. Cal. Aug. 18, 2025), motion to certify appeal denied, No. 25-cv-03462-AMO, 2025 WL 3034063 (N.D. Cal. Oct. 30, 2025); *see also Devereaux*, 263 F.3d at 1076 (finding a clearly established right to be free from charges brought based on fabricated evidence and further finding that fabricated evidence includes the use of "investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information").

Although *Devereaux* did not specify that individuals have a clearly established right to be free from *arrest or detention* based on fabricated evidence, as recognized by one California district court, the Sixth Circuit has spoken directly to this issue.

> In the qualified immunity context, the Sixth Circuit has observed that "the requirement of probable cause is one of the cornerstones of Fourth Amendment protection. . . . Thus, a reasonable police officer would know that fabricating probable cause, thereby effectuating a seizure, would violate a suspect's clearly established Fourth Amendment right to be free from unreasonable seizures. . . . Similarly, a reasonable police officer would be on notice that unlawfully detaining a suspect, despite the fact that the evidence used to detai[n] that individual was fabricated, would also be unlawful." *Spurlock v. Satterfield*, 167 F.3d 995, 1005–07 (6th Cir. 1999); *see Medeiros v. Clark*, 713 F. Supp. 2d 1043, 1062–63 (E.D. Cal. 2010) (quoting *Spurlock* and citing *Bretz*).

*Baertschiger v. Lopez*, No. 20-cv-06635-ODW-KS, 2021 WL 4555613, at *4 (C.D. Cal. June 11, 2021). The court is persuaded that, just as it is "virtually self-evident" that there is a clearly established right to be free from *charges* brought based on evidence fabricated through the use of sufficiently coercive interview tactics, so also is there a clearly established right to be free from *arrest and detention* based on evidence fabricated through the use of sufficiently coercive interview tactics. *Devereaux*, 263 F.3d at 1075; *see also id.* (relying on a prior Supreme Court decision finding a clearly established right to be free from a *conviction* secured through the knowing use of perjury and finding that this was sufficiently analogous to the right to be free from *charges* brought based on fabricated evidence).

Because the right to be free from arrest and detention based on fabricated evidence, including evidence elicited by law enforcement officers using sufficiently coercive interview tactics, is clearly established, defendants are not entitled to dismissal on qualified immunity grounds.

**F.     Leave to Amend**

Leave to amend should be granted "freely" when justice so requires. Fed. R. Civ. P. 15(a). The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings." *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960). Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure

deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (same). A district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990); *see also Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017) (same).

Here, plaintiff has requested leave to amend, and he has yet to have had an opportunity to amend his complaint following the court's ruling on a motion to dismiss. (Doc. No. 15 at 17.) Further, it is possible the deficiencies the court has identified above may be capable of being cured by the allegation of additional facts. *Cook*, 911 F.2d at 247. Accordingly, plaintiff will be granted leave to amend.

## CONCLUSION

For the reasons explained above,

1. Defendants' motion to dismiss (Doc. No. 9) is GRANTED in part and DENIED in part as follows:

    a. Defendants' motion to dismiss plaintiff's § 1983 *Monell* claim (claim 1) is granted with leave to amend as to defendant City of Modesto and denied as to all other defendants;

    b. Defendants' motion to dismiss plaintiff's false arrest/imprisonment claim (claim 2) and plaintiff's Bane Act claim (claim 3) is denied;

    c. Defendants' motion to dismiss plaintiff's IIED claim (claim 4) is granted with leave to amend;

2. Within twenty-one (21) days from the date of entry of this order, plaintiff shall file either a first amended complaint, or a notice of intent not to do so and to proceed only on the claims found to be cognizable in this order; and

/////

/////

3. If plaintiff files a notice of intent not to file a first amended complaint, then defendants shall file an answer as to the claims found to be cognizable in this order within twenty-one (21) days of service of that notice.

IT IS SO ORDERED.

Dated: **December 11, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

15